**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DEBRA CROOKENDALE,

                    Plaintiff,

          - v -

MAIMONIDES MEDICAL CENTER
and JESSICA WAGNER,

                    Defendants.

Civil Action No.: 1:26-cv-1730

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff Debra Crookendale ("Crookendale"), by and through her undersigned attorneys, brings this Complaint against Defendants Maimonides Medical Center ("Maimonides") and Jessica Wagner ("Wagner"), and alleges as follows:

**PRELIMINARY STATEMENT**

1.      Debra Crookendale, a highly successful Black Caribbean Director of Nursing, brings this action to challenge her unlawful and retaliatory termination by Maimonides and Wagner.

2.      After managing the hospital's top-performing intensive care unit, Crookendale formally reported Wagner to Human Resources for severe racial discrimination and disparate treatment on August 10, 2025.

3.      Eight days after Crookendale engaged in this protected activity, Maimonides and Wagner abruptly terminated her employment under the pretext of a fabricated performance improvement plan.

**JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS**

4.      The Court has original jurisdiction over Crookendale's federal claims pursuant to 28 U.S.C. §§ 1331, 1343.

5.      The Court has supplemental jurisdiction over Crookendale's state and city law

claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

6.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

7.    All conditions precedent to filing the instant action have been fulfilled. On or about September 10, 2025, Crookendale submitted a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On or about March 9, 2026, the EEOC issued Crookendale a Notice of Right to Sue, and this action is being brought within 90 days of Crookendale's receipt of the Notice of Right to Sue.

8.    Within 10 days of the commencement of this action, Crookendale will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, pursuant to New York City Administrative Code § 8-502(c).

## **PARTIES**

9.    Plaintiff Crookendale is a resident of the State of New York and former Director of Nursing of Maimonides.

10.    At all relevant times, Crookendale was an "employee" of Defendants under all relevant statutes.

11.    Defendant Maimonides Medical Center is a domestic not-for-profit corporation operating a hospital facility at 4802 10th Avenue, Brooklyn, New York 11219.

12.    Maimonides employed at least 15 employees throughout Crookendale's employment.

13. Defendant Jessica Wagner is a white woman who served as the Assistant Vice President for Surgery and Adult Critical Care at Maimonides and directly supervised Crookendale.

14. Wagner had the ability to affect the terms and conditions of Crookendale's employment and did so by, among other things, assigning her work, overseeing her work, evaluating her performance and providing feedback, and terminating her employment.

15. Upon information and belief, Wagner resides in New York.

16. At all relevant times, Defendants were Crookendale's "employer" under all relevant statutes.

## FACTUAL BACKGROUND

17. On December 4, 2023, Defendant Maimonides Medical Center ("Maimonides") hired Plaintiff Debra Crookendale ("Crookendale"), a Black woman from Barbados, to serve as the Day Nurse Manager for the Medical Intensive Care Unit ("MICU"), the hospital's largest intensive care unit.

18. Crookendale immediately demonstrated exceptional clinical and managerial leadership.

19. Under her direction, the MICU achieved the hospital's best patient safety metrics, including the lowest patient mortality rate and zero preventable unit infections.

20. Maimonides formally recognized Crookendale's success by issuing her highly positive performance evaluations in January and March 2025.

21. In April 2025, Maimonides selected Crookendale to represent the hospital at a regional job fair, where she successfully recruited four new nursing candidates.

22. In May 2024, Maimonides altered its reporting structure, requiring Crookendale

to report directly to Defendant Jessica Wagner, who is white.

23. Crookendale was the only Black nurse leader from Barbados reporting directly to Wagner.

24. Immediately upon assuming supervisory authority, Wagner subjected Crookendale to a racially hostile work environment, enforcing discriminatory double standards that were not applied to similarly situated, non-Black, non-Barbadian managers.

25. Wagner routinely subjected Crookendale to severe and pervasive verbal abuse, frequently screaming at her for minor, perceived infractions so loudly that subordinates could hear the yelling through closed office doors.

26. Wagner engaged in blatant disparate treatment regarding attendance and leave. She heavily scrutinized Crookendale's attendance and penalized her for requesting earned paid time off for family emergencies, including caring for her dying father.

27. Conversely, Wagner routinely granted unquestioned time off, scheduling leniency, and remote work privileges to non-Black, non-Barbadian managers.

28. For example, Wagner granted scheduling accommodations to Anzhela Dupliy, a non-Black manager, simply because she reported feeling "sleep deprived."

29. Crookendale suffers from a severe back injury, which constitutes a protected disability under state and city law. Despite knowing of this disability, Wagner expressly required Crookendale to report to work earlier than her non-Black, non-disabled counterparts and perform heavy physical duties.

30. Wagner initially refused Crookendale's requests for a reasonable accommodation to work remotely—a privilege freely afforded to non-disabled, white, and non-Black managers.

31. When Wagner eventually permitted remote work, she imposed arbitrary, punitive

conditions not required of Crookendale's peers Anzhela Dupli, a white woman, Fabio Restrepo, a white man, and Iwona Kupka, a white woman.

32.    Wagner further demonstrated severe racial bias by flatly refusing to discipline non-Black, non-Barbadian intensive care unit managers Anzhela Dupli, a white woman, and Tanner Medina, a white man, whose units experienced severe "sentinel events," including maternal patient deaths, retained surgical sponges, and missing narcotic vials.

33.    Meanwhile, Wagner actively undermined Crookendale's managerial authority by empowering an insubordinate faction of non-Black subordinates—including Ashley George ("George") and Sherri Williams—to bypass Crookendale's chain of command, unilaterally assign overtime, and report directly to Wagner.

34.    Having systematically isolated Crookendale and denied her access to essential operational reports, Wagner manufactured a pretextual case for her termination.

35.    On June 25, 2025, Wagner ambushed Crookendale in her office and placed her on a formal Performance Improvement Plan ("PIP").

36.    Prior to this date, Crookendale had never received a single formal verbal or written disciplinary warning.

37.    The PIP falsely accused Crookendale of failing to appropriately manage unit scheduling and payroll, deliberately setting unachievable standards.

38.    The PIP's allegations regarding payroll were demonstrably pretextual. For the vast majority of Crookendale's tenure, unit payroll was managed by George, a non-Black, non-Barbadian subordinate.

39.    In March 2025, George committed a massive, documented payroll error. Maimonides did not discipline George or place her on a PIP; instead, Wagner continued to

publicly praise her as a top employee.

40.     Maimonides also routinely tolerated severe payroll errors from other non-Black, non-Barbadian managers without subjecting them to formal discipline.

41.     When George commenced a leave of absence on July 21, 2025—nearly a month after the PIP was issued—Wagner abruptly forced Crookendale to assume the complex payroll duties with zero training or support on the hospital's technical systems.

42.     Demonstrating the pretextual nature of the discipline, Wagner retroactively cited inevitable learning-curve errors that Crookendale made on the unfamiliar payroll system in late July 2025 to justify the PIP that Wagner had already issued in June.

43.     Completely contradicting Defendants' manufactured claims of poor performance, Maimonides actually promoted Crookendale to Director of Nursing on July 8, 2025, providing her with a corresponding salary increase.

44.     Furthermore, on August 5, 2025, Maimonides' Director of Accreditation publicly commended Crookendale via a hospital-wide email for her exemplary leadership during a highly stressful Joint Commission survey.

45.     On August 10, 2025, Crookendale engaged in protected activity by formally complaining to Maimonides Human Resources personnel, Novella Jones and Tishonda Walker, that Wagner was subjecting her to severe racial discrimination and disparate treatment.

46.     Maimonides completely failed its legal obligation to conduct an impartial investigation.

47.     Instead, the hospital acted immediately to protect Wagner and silence Crookendale.

48.     On August 14, 2025, Human Resources summarily informed Crookendale that her

complaint of racial discrimination was "unsubstantiated."

49.    On August 17, 2025, Crookendale sent a follow-up email to Human Resources providing further documentation of Wagner's disparate treatment and active sabotage.

50.    The very next day, on August 18, 2025—a mere eight days after her initial protected complaint—Maimonides abruptly terminated Crookendale's employment.

51.    The termination letter, signed directly by Wagner, cited "poor work performance" as the sole, pretextual reason for dismissal.

52.    On August 20, 2025, the MICU staff submitted a joint letter to the Chief Nursing Officer protesting Crookendale's termination and praising her exceptional, fair, and supportive leadership.

53.    Maimonides subsequently replaced Crookendale with Luis Medina, a white man, further demonstrating the discriminatory nature of her termination.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of Title VII)
### *Against Defendant Maimonides*

54.    Crookendale repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

55.    By the actions described above, among others, Defendant discriminated against Crookendale by, inter alia, subjecting her to disparate treatment because of her membership in a protected class.

56.    Defendant violated Title VII by subjecting Crookendale to this behavior based, in whole or in part, upon her membership in that protected class.

57.    As set forth in detail above and herein, Maimonides discriminated against Crookendale and subjected her to adverse employment actions, including, but not limited to,

terminating her employment.

58. As a direct and proximate result of Defendant's unlawful employment practices, Crookendale has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

59. Accordingly, Defendant discriminated against Crookendale because of her race and nationality, in violation of her rights under Title VII.

60. Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Crookendale, entitling her to punitive damages.

**SECOND CAUSE OF ACTION**
**(Hostile Work Environment in Violation of Title VII)**
***Against Defendant Maimonides***

61. Crookendale repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

62. Defendant's actions and comments against Crookendale were sufficiently severe or pervasive to alter the conditions of Crookendale's employment and create an abusive working environment.

63. Maimonides did not remedy the hostile work environment despite Crookendale's complaints.

64. Maimonides thereby discriminated against Crookendale on the basis of her membership in a protected class by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

65. As a direct and proximate result of the unlawful discriminatory conduct carried out by Maimonides, Crookendale has suffered, and continues to suffer, emotional distress for

which she is entitled to an award of monetary damages and other relief.

66.     Maimonides's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Crookendale, entitling her to punitive damages.

### THIRD CAUSE OF ACTION
**(Retaliation in Violation of Title VII)**
*Against Defendant Maimonides*

67.     Crookendale repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

68.     As set forth in detail above, Crookendale engaged in activity protected under Title VII by opposing conduct that she reasonably believed to be unlawful discrimination.

69.     Maimonides was aware that Crookendale opposed unlawful conduct and/or asserted her rights under Title VII.

70.     Maimonides, unlawfully and without cause, retaliated against Crookendale as a direct result of Crookendale asserting her rights under Title VII, and Crookendale suffered materially adverse employment actions as a result.

71.     As a direct and proximate result of Maimonides's unlawful employment practices, Crookendale has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

72.     Maimonides's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Crookendale, entitling her to punitive damages.

73.     Accordingly, Maimonides retaliated against Crookendale in violation of her statutory rights as guaranteed by Title VII.

## FOURTH CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)
*Against All Defendants*

74.     Crookendale repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

75.     The aforementioned facts and circumstances demonstrate that Defendants discriminated against Crookendale because she was a member of a protected class.

76.     Crookendale is a member of a protected class under the NYSHRL and was perceived by Defendants as such.

77.      As set forth in detail above and here, Defendants discriminated against Crookendale and subjected her to adverse employment actions.

78.     As a direct and proximate result of the unlawful employment practices of Defendants, Crookendale has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

79.     Accordingly, Defendants discriminated against Crookendale because of her disability, in violation of her statutory rights as guaranteed by the NYSHRL.

## FIFTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of the NYSHRL)
*Against All Defendants*

80.     Crookendale repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

81.     Defendants' actions and comments against Crookendale were sufficiently severe or pervasive to alter the conditions of Crookendale's employment and create an abusive working environment.

82.     Defendants did not remedy the hostile work environment despite Crookendale's

complaints.

83.     Defendants thereby discriminated against Crookendale on the basis of her membership in a protected class by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

84.     As a direct and proximate result of the unlawful discriminatory conduct carried out by Defendants, Crookendale has suffered, and continues to suffer, emotional distress for which she is entitled to an award of monetary damages and other relief.

85.     Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Crookendale, entitling her to punitive damages.

### SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
### *Against All Defendants*

86.     Crookendale repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

87.     As set forth in detail above, Crookendale engaged in activity protected under the NYSHRL.

88.     Defendants retaliated by subjecting Crookendale to discrimination and adverse employment actions because of her protected activity in violation of Crookendale's statutory rights.

89.     Defendants were aware that Crookendale opposed unlawful conduct and asserted her rights under the NYSHRL.

90.     Crookendale has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

91.     Accordingly, Defendants retaliated against Crookendale in violation of her statutory rights as guaranteed by the NYSHRL.

**SEVENTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYCHRL)**
*Against All Defendants*

92.     Crookendale repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

93.     The aforementioned facts and circumstances demonstrate that Defendants discriminated against Crookendale because she was a member of a protected class.

94.     Crookendale is a member of a protected class under the NYCHRL and was perceived by Defendants as such.

95.      As set forth in detail above and here, Defendants discriminated against Crookendale in the terms and conditions of her employment by treating Crookendale less well than her similarly situated, non-Black, non-Barbadian coworkers.

96.     The discriminatory conduct directed at Crookendale was motivated, in whole or in part, by Crookendale race and national origin.

97.     As a direct and proximate result of the unlawful employment practices of Defendants, Crookendale has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

98.     The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Crookendale, entitling her to punitive damages.

99.     Accordingly, Defendants discriminated against Crookendale because of her disability, in violation of her statutory rights as guaranteed by the NYCHRL.

## EIGHTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of the NYCHRL)
*Against All Defendants*

100. Crookendale repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

101. Defendants' actions and comments against Crookendale were sufficiently severe or pervasive to alter the conditions of Crookendale's employment and create an abusive working environment.

102. Defendants did not remedy the hostile work environment despite Crookendale's complaints.

103. Defendants thereby discriminated against Crookendale on the basis of her membership in a protected class by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment.

104. As a direct and proximate result of the unlawful discriminatory conduct carried out by Defendants, Crookendale has suffered, and continues to suffer, emotional distress for which she is entitled to an award of monetary damages and other relief.

105. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Crookendale, entitling her to punitive damages.

## NINTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)
*Against All Defendants*

106. Crookendale repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

107. As set forth in detail above, Crookendale engaged in activity protected under the

NYCHRL.

108.    Defendants retaliated against Crookendale by treating her less well than similarly situated employees and subjecting her to discrimination and adverse employment actions because of her protected activity in violation of the NYCHRL.

109.    Defendants were aware that Crookendale opposed unlawful conduct and/or asserted her rights under the NYCHRL.

110.    As a result of this protected activity, Defendants retaliated against Crookendale by engaging in conduct that was reasonably likely to deter an individual from engaging in such protected activity, in violation of the NYCHRL.

111.    As a direct and proximate result of Defendants' unlawful employment practices, Crookendale has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and emotional distress.

112.    The conduct of Defendants has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Crookendale, entitling her to punitive damages.

113.    Accordingly, Defendants retaliated against Crookendale in violation of her statutory rights as guaranteed by the NYCHRL.

## TENTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of the NYSHRL and NYCHRL)
*Against Defendant Wagner*

114.    Crookendale repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

115.    Defendant Wagner aided, abetted, incited, compelled, or coerced Maimonides's unlawful conduct, including discrimination, and retaliation, against Crookendale by actually

participating in the conduct giving rise to the claims herein.

116.    Wagner was aware of their role in the unlawful activity and knowingly assisted

Maimonides in its violations of the NYSHRL and NYCHRL.

117.    As a direct and proximate result of Wagner's conduct, Crookendale has suffered

and continues to suffer damages, including lost earnings, lost benefits, other financial loss, and

emotional distress.

118.    Wagner's conduct has been intentional, deliberate, willful, malicious, reckless and

conducted in callous disregard of the rights of Crookendale, entitling her to punitive damages.

## ELEVENTH CAUSE OF ACTION
### (Discrimination and Retaliation in Violation of 42 U.S.C. § 1981)
### *Against All Defendants*

119.    Crookendale repeats and re-alleges each allegation of the preceding paragraphs as

if fully set forth here.

120.    Section 1981 of the Civil Rights Act of 1866 guarantees all persons within the

jurisdiction of the United States the same right to make and enforce contracts as is enjoyed by

white citizens.

121.    Defendants subjected Crookendale to a hostile work environment, disparate terms

of employment, and termination of her employment contract based on her race.

122.    Defendants retaliated against Crookendale for opposing and complaining about

said racial discrimination.

123.    Defendant Wagner was personally involved in, orchestrated, and executed the

discriminatory and retaliatory actions against Crookendale.

124.    Defendants acted intentionally, maliciously, and with reckless indifference to

Crookendale's federally protected rights.

125.    As a direct and proximate result of Defendants' violations of Section 1981, Crookendale has suffered substantial economic and non-economic damages.

## RELIEF

Plaintiff Debra Crookendale demands judgment in her favor and against Defendants Maimonides Medical Center and Jessica as follows:

A.    An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Crookendale for all monetary and/or economic damages, including, but not limited to, past and future lost earnings;

B.    An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Crookendale for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

C.    An award of punitive damages, in an amount to be determined at trial;

D.    Prejudgment interest on all amounts due;

E.    An award of Crookendale's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

F.    Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Debra Crookendale demands a trial by jury on all issues so triable of right.

Dated: March 24, 2026
      New York, New York

                                      **RISSMILLER PLLC**

By:    */s/ Jazly Liriano*
       Jazly Liriano
       5 Pennsylvania Plaza, 19th Floor
       New York, NY 10001
       T: (646) 664-1412
       jliriano@rissmiller.com

       *Attorneys for Plaintiff Debra Crookendale*